IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 19-cv-6163 |
| v. | ) ) ) | Judge Robert M. Dow, Jr. |
| MICHAEL THOMAS NOWAK & GREGG FRANCIS SMITH, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Proposed Intervenor United States of America's ("Intervenor") motion to intervene and stay [31]. For the reasons set forth below, Intervenor's motion is granted to the extent that it may intervene and granted in part to the extent that it seeks a stay. Consistent with the approach taken by Chief Judge Pallmeyer in *CFTC v. Vorley*, Case No. 18-cv-603 (N.D. Ill), document discovery may proceed, but all other discovery is stayed.

**I. Background**

There are two cases pending against Defendants Michael Thomas Nowak and Gregg Francis Smith (collectively, "Defendants") in this District. The instant case is a civil enforcement action brought by Plaintiff Commodity Futures Trading Commission ("Plaintiff"). [1.] The complaint alleges, among other things, that the Defendants engaged in deceptive market manipulation called "spoofing"[1] between 2008 and 2015 while working as traders at a bank's

---

[1] The complaint alleges that spoofing is a form of market manipulation wherein an investor feints at making a large transaction without ever intending to follow through. Other market participants, believing that the "spoofed" transaction is real, will adjust their behavior in predictable ways, which will affect the price of the underlying assets. The spoofer, knowing what others will do, can then back out and advantageously engage in other transactions based on the now-manipulated price.

precious metals market. [1, ¶¶ 1, 40–48.] Both defendants have also been criminally indicted. *United States v. Smith*, Case No. 19 CR 669 [1] (N.D. Ill. Aug. 22, 2019). The indictment charges Defendants with, among other things, allegedly spoofing the market for precious metals between 2008 and 2016. See generally *id.* Both the civil and criminal cases were brought the same day and were part of a joint investigation by Plaintiff and Intervenor. [41-2]; [41-3]; [41-4].

The criminal case is currently set for trial in April 2021. *United States v. Smith*, Case No. 19 CR 669 [118]. It remains to be seen whether this trial date will be pushed back as a result of the COVID-19 pandemic. *United States v. Smith*, Case No. 19 CR 669 [135]; [140]. As of March of this year, Intervenor has given Defendants 21 million pages (some duplicative) of discovery in the criminal case. [57-1 at 14]. This includes almost 100,000 audio files. [*Id.*] Discovery has not yet commenced in the civil case.

Intervenor has moved [31] the court to (a) intervene in the civil action and (b) stay the civil case in its entirety pending the resolution of the parallel criminal trial. Before the Court is the Department of Justice's motion to intervene [31] in the civil action and three competing proposals, [31]; [38]; [40], to stay proceedings in the civil action.

II.     **Motion to Intervene**

The parties all agree that Intervenor should be allowed to intervene pursuant to Rule 24 for the limited purpose of moving the Court to stay proceedings, though they disagree about whether wider intervention is warranted. Regardless, intervention is proper in the instant case. At the very least, permissive intervention is warranted, as Intervenor timely filed its motion and the civil and criminal cases have claims or defenses that share at least one common question of law or fact. Fed. R. Civ. P. 24(b); *Dave's Detailing, Inc. v. Catlin Ins. Co.*, 2012 WL 5377880, at *2 (intervention timely when made within four months of suit and soon after answer was filed). There also does

not appear to be any prejudice to allowing Intervenor to intervene, given that all of the parties agree that they should be allowed to join the case at least to some extent and the case is in its infancy as no answer or motion to dismiss has yet been filed.

### III. Motion to Stay

#### A. Legal Standard

A court has the inherent power to manage its docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Exercising this power requires balancing the competing interests of plaintiffs, defendants, and the public. *Id.*; *Hare v. Custable*, 2008 WL 1995062, at *2 (N.D. Ill. May 6, 2008). Although stays in light of parallel criminal proceedings are not of constitutional magnitude (*United States v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage*, 2006 WL 27119, at *1 (N.D. Ill. Jan. 4, 2006)), courts nonetheless retain discretion to issue stays in those circumstances. Though staying a case is "an extraordinary remedy," *S.E.C. v. LaGuardia*, --- F. Supp. 3d ---, 2020 WL 476439, at *2 (S.D.N.Y. Jan 23, 2020) (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)), a court may stay a civil proceeding pending resolution of criminal proceedings "when the interests of justice" require it. See *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970).

#### B. Analysis

Parallel civil and criminal actions such as this present two overarching and competing challenges. On the one hand, criminal defendants are reticent to engage in full civil discovery, as it may require them to answer questions about potentially criminal conduct or invoke the Fifth Amendment. Thus, criminal defendants often advocate postponing any aspect of civil discovery where they will have to go on the record until after the criminal trial has concluded. In contrast,

Case: 1:19-cv-06163 Document #: 62 Filed: 06/08/20 Page 4 of 10 PageID #:419

however, criminal defendants sometimes want the rest of civil discovery to be ongoing. They argue that they don't want to hold up the civil trial unnecessarily, and it is always better to get discovery early, before memories fade, computer files corrupt, and documents are lost. This, however, opens up another can of worms, because civil discovery is much broader than criminal discovery—that is, criminal defendants can learn a lot more about the prosecution's case through civil discovery than they otherwise would be able to in the criminal case alone. Compare Fed. R. Civ. P. 26(b)(1) with 18 U.S.C. § 3500. The distinction between the two discovery protocols is not idle: criminal discovery is narrower because of concerns that criminal defendants may use this information to impede investigations into them, tamper with witnesses, or craft more airtight perjured testimony.

Here, Defendants and Intervenor agree that the civil proceedings should be stayed to a certain extent. Intervenor wants the case stayed in its entirety pending the resolution of the criminal case, so that Defendants cannot take advantage of civil discovery. Defendants Nowak and Smith both propose alternatives that would keep some civil discovery open without requiring them to go on record. Nowak proposes that the case be stayed, except that document discovery should be ongoing. Smith would rather have more expansive discovery, with an exception for any discovery that may require someone (including third parties) to invoke the Fifth Amendment.

Plaintiff does not oppose Intervenor's proposed total stay, but does object to Defendants' respective proposals. Specifically, according to Plaintiff, Smith's proposal is definitionally one-sided, as Defendants are the most likely people to invoke the Fifth Amendment, whereas the governments witnesses will not. Determining whether a given statement is likely to trigger Fifth Amendment concerns will also likely be the subject of further (distracting) litigation. And Nowak's proposal would allow discovery to proceed before an answer has been filed, in

contravention of the MIDP. This may lead to duplicative discovery requests, and could give Defendants an unwarranted strategic advantage throughout discovery.

Courts in this district begin with a non-exhaustive six-part test to determine whether a stay should be granted: (1) whether the civil and criminal proceedings involve the same subject matter; (2) whether the government has initiated both proceedings; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of Plaintiff in proceeding expeditiously, and the potential prejudice that Plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on Defendants if a stay is denied. See, *e.g.*, *Salcedo v. City of Chicago*, 2010 WL 2721864, at *2 (N.D. Ill. Jul. 8, 2010).

*First*, there is substantial overlap between the civil and criminal proceedings, as both relate to Defendants' trading activity over a similar period of time. This factor weighs in favor of a stay. *Doe v. City of Chicago*, 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005) (stay was warranted where "[t]he [] criminal charges pertain to the same time period and same general sets of allegations made in the Plaintiffs' civil suit").

*Second*, the government initiated both proceedings on the same day. This may be problematic if the prosecution is trying to use liberal civil discovery to augment its criminal case. See *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 946 (N.D. Ill. 2008). On the flipside, if a criminal defendant turns around and initiates a civil suit, it may have done so to circumvent criminal discovery. In such instances, a stay is warranted, even if there is no evidence that the criminal defendant's civil suit was motivated by a desire to evade the Jencks Act. See *S.E.C. v. Kanodia*, 153 F. Supp. 3d 478, 482 (D. Mass. 2015) (discussing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)). Neither of those concerns are in play here, so this factor does not weigh

in favor of a stay. Some courts take this a step further, however, and conclude that the government cannot have its cake and eat it too, by benefiting from the efficiencies of parallel litigation without bearing the negative consequences. Compare, *e.g.*, *S.E.C. v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005) (describing motions to stay in such situations as "bizarre" given "that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously."), with *S.E.C. v. Shkreli*, 2016 WL 1122029, at *7 n.6 (E.D.N.Y Mar. 22, 2016) (excusing simultaneous litigation because administrative agencies have independent mandates to enforce the law, and statutes of limitations prevent too much tarrying).

*Third*, the posture of the criminal proceedings weighs in favor of a stay. Generally, "once an indictment is handed down, as is the case here, a stay is appropriate." *Salcedo*, 2010 WL 2721864, at *3; see also *Chagolla*, 529 F. Supp. 2d at 946 (factor weighs slightly in favor of stay where indictment has been handed down, but no trial date set); *Shkreli*, 2016 WL 1122029, at *5 ("[T]he strongest argument for granting a stay is where a party is under criminal indictment.") (citations and quotation marks omitted). Here, not only have Defendants been indicted, but there is a trial date set, albeit almost one year hence and subject to any potential COVID-related postponements.

*Fourth*, both sides can make the argument that their proposal is in the public interest. On the one hand, the public has an interest in prompt disposition of civil litigation. *Salcedo*, 2010 WL 2721864, at *3 (citing 28 U.S.C. §§ 471–82). On the other, the public has an interest in efficient resolution of criminal prosecutions, untainted by civil discovery. *Id.* (citing *Chagolla*, 529 F. Supp. 2d at 947). Courts can come to divergent outcomes as to how heavily to weight these against each

other in any given case. One noted dispute is whether the public *truly* has an interest in the strict exclusion of certain materials from criminal discovery where there is no evidence that the criminal defendants will engage in skullduggery. Compare, *e.g.*, *S.E.C. v. O'Neill*, 98 F. Supp. 3d 219, 221–22 (D. Mass. 2015) (disregarding the Government's hypothetical worst-case-scenarios about perjury and concluding that the preservation of the Government's tactical advantages at trial are not reason to stay proceedings in their entirety); *SEC v. Cioffi*, 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008) ("[T]he limits on criminal discovery do not exist for their own sake. * * * [T]hey are intended to guard against specific concerns" such as perjured testimony), with *Shkreli*, 2016 WL 1122029, at *7 ("Ultimately, the court concludes that the public's interest in the effective enforcement of the criminal law is the paramount public concern.") (collecting cases on both sides of the split).

A stay is also in the public interest if it would "avoid a duplication of efforts and a waste of judicial time and resources." See *S.E.C. v. Gordon*, 2009 WL 2252119, at *5 (N.D. Okla. July 28, 2009). Civil discovery pending a parallel criminal trial will always be at least potentially redundant, because the trial may preclude certain of Defendants' defenses in the event of a guilty verdict. *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070–71 (C.D. Cal. 2008). And piecemeal discovery is likely to be inherently inefficient. See *S.E.C. v. Carroll*, 2020 WL 1272287, at *5 n.2 (S.D.N.Y. Mar. 17, 2020). Each of Defendants' counter-proposals also raise the distinct possibility of redundant or inefficient discovery. Nowak's proposal would not require Defendants to answer the complaint—so it is possible that an as-yet-unannounced issue will change the scope of discovery, requiring everyone to double back after the criminal trial. And Smith's proposal of excepting material that may implicate Fifth Amendment concerns seems likely to tee off numerous

squabbles that are ultimately irrelevant, given that the information will become discoverable once a verdict is rendered in the criminal case.

*Fifth*, Plaintiff does not object to a complete stay, so superficially, this factor does not weigh against a stay. But this factor seems to contemplate that the Defendants are the movants. Here, however, the Intervenor has moved for the stay, rendering this formulation inapposite. A better question is whether *Defendants* would be prejudiced by delay. See *Salcedo*, 2010 WL 2721864, at *2 (explaining that the Court is required to consider defendants' interests). They argue that they want to clear their good names as quickly as possible, and getting a head start on what is sure to be a lengthy discovery process will help them do so. See *Hare*, 2008 WL 1995062, at *3 (acknowledging that this is a powerful concern). They also point out that the longer they have to wait, the more likely it is that memories will fade and relevant documents will get lost, especially when it comes to third party document production. See *S.E.C. v. Jones*, 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005). Plaintiff is not at such a disadvantage because it has already conducted a lengthy investigation in which it had subpoena power, and therefore presumably has its hands on some of the key documents that it needs. That said, Intervenor has already provided Defendants with tens of millions of pages of documents, many of which will surely be relevant in moving forward with discovery in the civil case once the criminal trial is over. *SEC v. Global Indus.*, 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012). In sum, this factor therefore weighs slightly in favor of limiting the stay and allowing at least some discovery.

*Sixth*, to the extent that any stay is in dispute, Defendants would not be prejudiced by its denial—indeed, that's what they want.[2] Again, it is helpful to think of the flip side of this

---

[2] Though some defendants may prefer to focus their resources on one case at a time, neither Nowak nor Smith appear daunted by defending their criminal case while reviewing civil discovery. The Court therefore takes them at their word that they will not be prejudiced by denial of a complete stay.

8

question—would Plaintiff be prejudiced by denial of the stay? It claims that both of Defendants' proposals would prejudice it by subjecting it to one-sided discovery requests. Defendants could get whatever they want, whereas Plaintiff will have to wait for at least some materials. This argument is superficially appealing, but it ignores the reality of this case: Plaintiff did a three-year investigation, where it had subpoena power, and, in fact, deposed Defendant Smith. Though Plaintiff may not have had as much access as it will under Rule 26, it has already apparently collected millions of pages of documents. Moreover, with regard to Defendant Nowak's proposal, it can hardly be said that Plaintiff does not know who the key players are or Defendant Nowak's likely defenses—the CFTC has spent three years investigating him and amassed an extensive document cache.[3] Of course, as Plaintiff points out, the pendulum may swing in the other direction should the Court allow even limited discovery to go forward. As such, this factor weighs lightly in favor of a complete stay.

As both parties acknowledge, one other court in this District recently considered a motion to stay a parallel CFTC enforcement action pending resolution of the criminal trial in *C.F.T.C. v. Vorley*, Case No. 18-cv-603. In that case, defendants suggested something akin to Defendant Smith's proposal (full discovery, with a carve out for those who may need to take the Fifth). Judge Pallmeyer rightly rejected that proposal as too one-sided against the civil plaintiff. [39-3 at 21.] Judge Pallmeyer was initially receptive to the intervenor's idea of a complete stay, but when asked

---

[3] Plaintiff also objects that allowing document discovery to proceed prior to Defendant's answer is against the Federal Rules of Civil Procedure and MIDP. But the Court possesses the inherent authority to remove a case from the MIDP, and chooses to do so here. See *Landis*, 299 U.S. at 254–55; *Resnick v. Schwartz*, 2018 WL 4191525, at *7 n.11 (N.D. Ill. Sept. 3, 2018) (removing case from MIDP). And the Court rejects Plaintiff's argument that it will be unduly prejudiced by not having Defendants' Rule 12 responses in hand before discovery for the reasons stated above—this is hardly a mine-run case where Plaintiff is in the dark about what discovery is outstanding.

by the defendants to reconsider, the court stayed the case, except for document discovery (which is essentially Nowak's plan here). [*Id.* at 22–25.]

After weighing all of the relevant factors, the Court concludes that in the interest of justice, document discovery may proceed, although the parties should try to avoid duplicating what has already been produced in the criminal action. Defendant Smith's proposal, however, is potentially one-sided, and is against the public interest given the duplicative discovery litigation that it is likely to engender. To the extent that any document requests appear likely to create prejudice to any party or to infringe on Defendants' constitutional rights, a motion for a protective order may be filed. Oral discovery will be stayed at this time.

### IV. Conclusion

For the reasons set forth above, Intervenor's motion [31] is granted to the extent that it may intervene and granted in part to the extent that it seeks a stay. Consistent with the approach taken by Chief Judge Pallmeyer in *CFTC v. Vorley*, Case No. 18-cv-603 (N.D. Ill), document discovery may proceed, but all other discovery is stayed.

Dated: June 8, 2020

_____
Robert M. Dow, Jr.
United States District Judge